UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARL W. BOONE,

        Petitioner,

        Case No. 04-cv-40077

v.

        HON. STEPHEN J. MURPHY, III

DAVID L. BERGH,

        Respondent.

_____/

**OPINION AND ORDER DENYING THE HABEAS CORPUS
PETITION AND DECLINING TO ISSUE A CERTIFICATE OF
APPEALABILITY, BUT GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner Carl W. Boone has filed a *pro se* application for a writ of habeas corpus under 28 U.S.C. § 2254. The habeas petition challenges Boone's state court conviction for armed robbery on the grounds that the verdict was against the great weight of the evidence, that his attorneys were ineffective, and that he was denied an evidentiary hearing. The Court has concluded for reasons given below that the state courts' adjudications of Boone's claims were objectively reasonable. Therefore, the habeas petition will be denied.

**PROCEDURAL HISTORY**

Boone was charged in Wayne County, Michigan with robbing Paul Johnston on September 16, 1999, in Canton Township. On June 20, 2000, a Wayne County Circuit Court jury found him guilty, as charged, of armed robbery, in violation of MICH. COMP. L. § 750.529. The trial court sentenced him as a habitual offender to imprisonment for ten to

twenty years.

In an appeal of right, Boone argued that (1) the verdict was against the great weight of the evidence and (2) he was denied the effective assistance of trial counsel because (a) counsel failed to request a mistrial when a witness testified that Boone had been on parole and (b) counsel failed to object to evidence that he fled from police, and to a jury instruction on flight. The Michigan Court of Appeals was unpersuaded by these arguments and affirmed Boone's conviction in an unpublished *per curiam* decision. *See People v. Boone*, No. 229131 (Mich. App. Mar. 22, 2002). Petitioner raised the same claims in the Michigan Supreme Court, which denied leave to appeal on December 4, 2002, because it was not persuaded to review the issues. *See People v. Boone*, 467 Mich. 911 (2002) (table).

Petitioner filed a federal habeas corpus petition on March 10, 2004. He alleged that (1) the verdict was against the great weight of the evidence, (2) he was denied the effective assistance of trial counsel, (3) the trial judge abused his discretion when making evidentiary rulings and failed to grant a new trial when the evidence warranted it, and (4) he was denied the effective assistance of appellate counsel.

In its answer to this petition, respondent argued that Boone did not exhaust state court remedies with respect to his fourth claim. The Honorable Paul V. Gadola determined that Petitioner's fourth claim and portions of his second and third claims had not been properly raised in state court. Consequently, on November 29, 2004, Judge Gadola stayed Petitioner's exhausted claims and dismissed his unexhausted claims without prejudice. The case was closed for administrative purposes.

Boone subsequently filed a motion for relief from judgment in the state trial court. He alleged that he was entitled to an evidentiary hearing on his claim about the

2

ineffectiveness of trial counsel, and that his appellate attorney was ineffective for failing to request a hearing. The trial court denied this motion, and the Michigan appellate courts denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Boone*, No. 268998 (Mich. Ct. App. Sept. 28, 2006); *People v. Boone*, 477 Mich. 979; 725 N.W.2d 332 (2006).

On February 15, 2007, Petitioner returned to this Court and filed this petition for a writ of habeas corpus. As it was related to the 2004 petition, it was eventually reassigned to Judge Gadola, who re-opened the 2004 habeas case and ordered the Clerk of Court to transfer all the documents filed in case number 07-10690 to case number 04-40077. Respondent has filed an answer to the new habeas petition, and Petitioner has filed a reply. On September 4, 2008, the case was reassigned to the undersigned.

## STANDARD OF REVIEW

This Court may grant habeas corpus relief only if the state court's adjudication of Petitioner's claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A

state court's decision is an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.

## ANALYSIS

I. Weight and Sufficiency of the Evidence

    A. Governing Law

A habeas petitioner's contention that a new trial should be granted because the jury's verdict was against the great weight of the evidence generally does not implicate any federal constitutional protection accorded to a state court defendant. *See Tibbs v. Florida*, 457 U.S. 31, 41-44 (1982). The only question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n 16.

In Michigan, "'[t]he elements of armed robbery are: (1) an assault, (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute.'" *People v. Carines,* 460 Mich. 750, 757; 597 N.W.2d 130, 135 (1999) (quoting *People v. Turner*, 213 Mich. App. 558, 569; 540 N.W.2d 728, 734 (1995)). The "weapon" described in the statute is "a dangerous weapon or an

article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon." MICH. COMP. L. § 750.529.

### B. Trial Testimony

The complaining witness, Paul Johnston, testified that, on the night in question, a man named "Clifford" introduced him to petitioner Boone for the purpose of buying cocaine. The three of them went to Mr. Johnston's home where they consumed drugs and alcohol. At some point, Boone took some of Mr. Johnston's personal belongings and placed them in his car. Mr. Johnston retrieved his property. Later that night, Johnston went upstairs to his bedroom to acquire bathing suits so that the three men could use his hot tub. Boone followed him upstairs and swung a metal bar at him. Johnston was hit over the head five or six times and knocked unconscious, but recovered consciousness and began to fight with Petitioner. He lost consciousness a second time as Boone choked him. When he regained consciousness, he went outside and saw Boone putting his two televisions and other items into Boone's car. According to Johnston, he had not given Boone permission to take these items, and the items were not collateral for the drugs he had used. Johnston ran away and left Petitioner in his driveway. Johnston initially lied to the police about the consumption of drugs because he did not want his wife to know that he was using drugs.

Police Officer Erik Kaledas testified that it had appeared clear to him, upon arriving at the Johnston home, that Mr. Johnston had been robbed. Mr. Johnston was injured, some of his property was missing, and there were signs of a struggle in the bedroom.

For his part, Boone admitted to the jury that he went to Mr. Johnston's home on the night in question and that he sold drugs to Mr. Johnston and Clifford Warren. He claimed that Mr. Johnston gave him two televisions, a VCR, and other items as collateral for

5

additional quantities of drugs and that Johnston swung at him when he called Johnston a "fag." He denied robbing Mr. Johnston or stealing anything from him. He also denied running away when the police appeared at his house.

Clifford Warren testified on rebuttal that Boone had told him that he (Boone) was going "to roll"-- that is, to fight-- "with Mr. Johnston." Mr. Warren also testified that Johnston had given Boone collateral, but he admitted that he did not tell the police about any deal involving collateral.

### C. Conclusion

Based on this testimony, the Court concludes that if the jury chose to believe Mr. Johnston, there was sufficient evidence for a rational trier of fact to find that the prosecution proved the essential elements of armed robbery beyond a reasonable doubt. There was an assault with a dangerous weapon and a felonious taking of property in Mr. Johnston's presence.

Boone maintains that the complainant's testimony was full of inconsistencies and lies. Although it is true that the trial was a credibility contest, "under *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). "It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir. 1992)). Consequently, the Court need not determine whether Mr. Johnston was more credible than Petitioner-- instead, it only need decide whether a rational trier of fact *could* have done so. The Court is well satisfied that a rational trier of fact could have concluded from the evidence that Petitioner robbed Mr. Johnston while armed with a

6

dangerous weapon. Therefore, the state appellate court's conclusion that the evidence did not preponderate heavily against the verdict did not result in a decision that was contrary to *Jackson*.

## II.  Effectiveness of Trial Counsel

### A.  Governing Law

Boone's second habeas claim alleges ineffective assistance of trial counsel. The Supreme Court's decision in *Strickland v. Washington,* 466 U.S. 668 (1984), qualifies as "clearly established federal law" under 28 U.S.C. § 2254(d)(1) for purposes of evaluating ineffective-assistance-of-counsel claims. *Williams v. Taylor*, 529 U.S. at 391. In *Strickland*, the Supreme Court explained that to prevail on a claim of ineffective assistance, a petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness, *id.* at 68-- that is, if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). To do so, he must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

### B.  The Reference to Parole

Boone alleges that his attorney should have requested a mistrial in response to testimony by the State's rebuttal witness, Clifford Warren, that Boone was on parole at the

time of the alleged robbery. The remark was an unresponsive answer to the prosecutor's question whether Mr. Warren realized after the robbery that Boone was not his friend. Mr. Warren explained that he had left the house and called the police while Boone and Mr. Johnston were arguing and fighting over drugs because Boone was on parole at the time and, in Mr. Warren's opinion, the fight was a stupid thing to do. The prosecutor immediately repeated his question about whether Mr. Warren realized that Boone was not his friend. Mr. Warren answered the prosecutor's question by explaining that he had not seen Boone in years prior to the day of the robbery.

Defense counsel then conducted a short cross-examination of Mr. Warren, and the trial court asked the jurors whether they had any questions. The jurors responded to the court's inquiry by asking, among other things, whether it was true that Boone was on parole at the time. The trial court replied to the jurors' question by stating that whether or not Boone was on parole was not an issue for their consideration and that they should not consider the remark about parole for any purpose when they began their deliberations.

Certainly, a defense attorney who learns that a jury is likely to consider irrelevant and prejudicial evidence should consider moving for a mistrial. Nevertheless, the Court regards the curative instruction given by the trial judge as sufficient to preserve the basic fairness of the trial. Boone's trial counsel could reasonably have come to this conclusion as well. In fact, he informed the trial court at the conclusion of the case that he thought the trial court's cautionary instruction almost immediately after the remark about parole had been sufficient and that he had not wanted an additional instruction regarding the testimony that Boone was on parole. Given this fact, it is not this Court's place to second-guess trial counsel's assessment of the costs and benefits of asking for a mistrial. *See Craft v.*

*Stratton*, No. C 04-4226 JSW (PR), 2007 WL 3144855, at *14-16 (N.D. Cal. Oct. 24, 2007) (concluding that defense counsel was not ineffective for failing to request a mistrial after a witness inadvertently mentioned the petitioner's criminal history where the remark was an accidental one made during a long trial, the trial court immediately struck the statement from the record and provided an elaborate admonition to the jury on the following day, and the evidence of guilt was strong); *Burnett v. Burge*, No. 02-CV-00265, 2005 WL 2406000, at *8-9 (W.D. N.Y. Sept. 29, 2005) (concluding that defense counsel was not ineffective for failing to request a mistrial after a defense witness testified that the petitioner was on parole where there was no other mention of the petitioner's parole status, the issue was not explored by the prosecution on cross-examination of the witness, and the isolated reference to the petitioner's parole was not so obvious and prejudicial as to require a mistrial); *but see Lee v. Lampert*, __ F. Supp. __, __, No. CV 02-300-CL, 2009 WL 764434, at *17-18 (D. Or. Mar. 24, 2009) (finding in a child sexual abuse case that counsel was ineffective where the jury was told on two occasions that the habeas petitioner was on parole at the time of the offenses, but where counsel also failed to present an expert witness, there was no objection to hearsay testimony, and an error occurred under the Confrontation Clause). Therefore, defense counsel's failure to move for a mistrial did not amount to deficient performance.

Boone also implies that the reference to parole resulted in a conviction based on illegal conduct other than the charge for which he was on trial. This claim lacks merit because

> [t]here is no clearly established Supreme Court precedent which holds that
> a state violates due process by permitting propensity evidence in the form of
> other bad acts evidence . . . . While the Supreme Court has addressed

9

> whether prior acts testimony is permissible under the Federal Rules of Evidence, see *Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003); *see also Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007), *cert. denied*, __ U.S. __, 128 S. Ct. 1704 (2008). Thus, to the extent that Petitioner is claiming he was convicted on the basis of "other bad acts," his claim is not cognizable on habeas corpus review.

### C. The Testimony and Jury Instruction on Flight

Boone alleges that his trial attorney should have objected to evidence that he fled from the police, and to a subsequent jury instruction on flight. This claim arises from Sergeant Charles Raycraft's testimony that, when he approached Boone's front porch on September 16, 1999, he saw Boone look out the front window and then run toward the back of the house. Although Sergeant Raycraft was dressed in plain clothes, he was accompanied by uniformed officers and detectives, who went to the back of the house.

Evidence of flight is admissible under state law, *see People v. Biegajski*, 122 Mich. App. 215, 220; 332 N.W.2d 413, 415 (1982), but of course is not conclusive evidence of guilt. The prosecutor stated as much during closing arguments, and the trial court also instructed the jurors to that effect, stating that a person may run or hide for reasons other than consciousness of guilt, such as panic, mistake, or fear. Indeed, the evidence indicated that Boone's conduct was ambiguous as to his guilt. Although he allegedly ran to the back of the house when he saw the police, he testified that he was on the telephone when the police arrived. He claimed that he got off the telephone to answer the door and then walked toward the back of the house to hang up the telephone before opening the

front door. He denied running from the front door to the back door, and Sergeant Raycraft testified that Petitioner ultimately did open the front door and identify himself.

Since the evidence of flight was apparently admissible under state law, and since it was ambiguous enough to be interpreted either in favor of or against Boone-- especially in light of the trial court's jury instruction-- the Court concludes that defense counsel was not ineffective for failing to object to Sergeant Raycraft's comments or to the jury instruction on flight. Petitioner has failed to show that his attorney's representation fell below an objective standard of reasonableness and that the result of the proceedings would have been different had defense counsel objected. The state court's conclusion that defense counsel was not ineffective was not contrary to, or an unreasonable application of, *Strickland*.

### III. Effectiveness of Appellate Counsel

In his third habeas claim, Boone alleges that his appellate attorney was ineffective for not requesting an evidentiary hearing on his claims about the ineffectiveness of trial counsel. Boone asserts that his attorney's omission deprived him of a meaningful opportunity to be heard on direct appeal and that the results of his appeal would have been different had appellate counsel requested a hearing.

In considering Boone's motion for relief from judgment, the trial court adjudicated this claim. It noted that the court of appeals had ruled on the merits of Boone's claim about trial counsel, and then determined that he had not established the requisite prejudice. The trial court further opined that Petitioner would not have been entitled to an evidentiary hearing in any event and thus appellate counsel was not ineffective for failing to seek one on a meritless issue.

11

The proper standard for evaluating Petitioner's claim about appellate counsel is the standard enunciated in *Strickland*. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Therefore, to prevail on his claim, Petitioner must show that his appellate attorney's performance was objectively unreasonable and that, but for his attorney's unreasonable failure to request an evidentiary hearing, he would have prevailed on appeal. *Id.*

There was no need for an evidentiary hearing to determine whether trial counsel's omissions were the result of trial strategy or negligence, because the Michigan Court of Appeals was able to resolve Petitioner's claim about trial counsel on the basis of the record. Therefore, appellate counsel was not ineffective for failing to request an evidentiary hearing, and Petitioner was not prejudiced by appellate counsel's omission. The trial court's decision on this issue was objectively reasonable.

IV.  Evidentiary Hearing

Boone's fourth and final claim is that he is or was entitled to an evidentiary hearing on his claims about trial and appellate counsel. In denying relief from judgment, the trial court stated that Boone had failed to establish entitlement to relief with regard to his request for a hearing, as the Michigan Court of Appeals had reviewed Petitioner's ineffectiveness claim on the merits and had found a sufficient record from which to review the claim.

Under Michigan law, an evidentiary hearing is appropriate in the trial court if a factual dispute exists and the defendant's ineffective-assistance-of-counsel claim depends on facts not of record. *People v. Ginther,* 390 Mich. 436, 441-43; 212 N.W.2d 922, 924-25 (1973). "[F]ederal habeas corpus relief," however, "does not lie for errors of state law." *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990). "In conducting habeas review, a federal court is limited

12

to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241 and *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam)). The Court finds no basis for concluding that the trial court's denial of an evidentiary hearing was erroneous in this way. As a matter of *federal* law, when a habeas petitioner is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2)[1], the District Court has discretion in deciding whether to grant an evidentiary hearing. *Schriro v. Landrigan*, 550 U.S. 465, 468, 127 S. Ct. 1933, 1937 (2007). "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.* at 474.

---

[1] This subsection of the statute reads:

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--

    (A) the claim relies on--

        (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

        (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

    (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Petitioner's claims about trial and appellate counsel lack merit and do not provide sufficient grounds for release. Therefore, a federal evidentiary hearing is unnecessary.

## CONCLUSION

The state courts' rejections of Petitioner's claims did not result in unreasonable determinations of the facts or in decisions that were contrary to, or an unreasonable application of, Supreme Court precedent. Accordingly, the petition for a writ of habeas corpus [Dkt. 27] is **DENIED**. The Court **DECLINES** to issue a certificate of appealability because reasonable jurists would not find the Court's assessment of Petitioner's constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner nevertheless may appeal this Court's decision *in forma pauperis* because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

        s/Stephen J. Murphy, III
        Stephen J. Murphy, III
        United States District Judge

Dated: April 23, 2009


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 23, 2009, by electronic and/or ordinary mail.

        s/Alissa Greer
        Case Manager